# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| PAUL ANDREW LEITNER-WISE, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. 17-cv-01859 (APM) |
| KONIAG, INC., | ) ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OPINION

### I.   INTRODUCTION

Plaintiff Paul Andrew Leitner-Wise is the inventor of a patented Self-Cleaning Gas Operating System for Firearms. Over 14 years ago, Plaintiff sold a majority interest in his company, Leitner-Wise Rifle Co. ("LWRC"), to subsidiaries of Defendant Koniag, Inc. and thereafter signed an Employment Agreement with LWRC that promised to pay him royalties from the sales of products incorporating his invention. Plaintiff now brings this case alleging, among other things, that Defendant failed to pay him earned royalties and fraudulently induced him to sell his ownership shares. He alleges common law claims of breach of contract, unjust enrichment, fraudulent inducement, and conversion.

Defendant now seeks summary judgment as to all claims, and Plaintiff prays for partial summary judgment. Defendant prevails for three independent reasons: (1) upon leaving LWRC, Plaintiff agreed to a general release of all claims against Defendant; (2) all of Plaintiff's claims are time barred; and (3) Defendant is not a party to the Employment Agreement and thus is under no obligation to pay Plaintiff royalties. In addition, the court denies Plaintiff's request for additional

discovery because it comes too late and, in any event, no foreseeable discovery could cure the fatal deficiencies inherent in Plaintiff's case.

## II. BACKGROUND

### A. Factual Background[1]

In October 1998, Plaintiff Paul Andrew Leitner-Wise founded the Leitner-Wise Rifle Company, Inc ("LWRC"). *See* Pl.'s Mot. for Part. Summ. J., ECF No. 26 [hereinafter Pl.'s Mot.], Pl.'s Stmt. of Facts Not Reasonably in Dispute, ECF No. 26-1 [hereinafter Pl.'s Facts], ¶ 1; Def.'s Opp'n to Pl.'s Mot. for Summ. J., ECF No. 28 [hereinafter Def.'s Opp'n], Def.'s Stmt. of Facts in Opp'n to Pl.'s Mot., ECF No. 28-1 [hereinafter Def.'s Opp'n Facts] (not contesting fact). In 2004, Plaintiff invented a "Self-Cleaning Gas Operating System for a Firearm" ("the Invention"), and secured a United States Patent on it in 2008. *See* Complaint, ECF No. 1 [hereinafter Compl.], ¶ 7; Def.'s Am. Answer, ECF No. 14 [hereinafter Am. Answer], ¶ 7; *see also* Compl., U.S. Patent, ECF No. 1-1.

In 2004, Plaintiff sold a majority interest in LWRC to two of Defendant Koniag, Inc.'s subsidiaries, Koniag Development Corporation and Integrated Concepts and Research Corporation. *See* Pl.'s Facts ¶¶ 5, 6; Def.'s Opp'n Facts (not contesting fact); *see also* Pl.'s Mot., Ex. F, ECF No. 26-2. The following year, on April 11, 2005, Plaintiff signed an Employment Agreement with LWRC—at the time, controlled by Defendant's subsidiaries—to serve as LWRC's Chief Technical Officer. *See* Pl.'s Facts ¶ 17; Def.'s Opp'n Facts (not contesting fact);

---

[1] In opposing Defendant's Motion for Summary Judgment, Plaintiff failed to controvert any fact asserted in Defendant's supporting statement of undisputed facts. *See* Def.'s Mot. for Summ. J., ECF No. 15, Def.'s Stmt. of Material Facts in Support of Def.'s Mot. for Summ. J., ECF No. 15-2; Pl.'s Opp'n to Def.'s Mot., ECF No. 23 (containing no responsive statement of facts). The court therefore treats as true the facts asserted in Defendant's Statement. *See* Fed. R. Civ. P. 56(e); LCvR 7(h)(1). In addition, with his Motion for Partial Summary Judgment, Plaintiff did submit a statement of undisputed facts, *see* Pl.'s Mot. for Part. Summ. J., ECF No. 26, Pl.'s Stmt. of Facts Not Reasonably in Dispute, ECF No. 26-1, to which Defendant responded, *see* Def.'s Opp'n to Pl.'s Mot. for Summ. J., ECF No. 28, Def.'s Stmt. of Facts in Opp'n to Pl.'s Mot., ECF No. 28-1. The court treats as true any fact admitted by Defendant in this response.

*see also* Compl., Ex. B, ECF No. 1-2 [hereinafter Employment Agreement]. Plaintiff acknowledged in the Employment Agreement that "[a]ll right, title and interest in and to the [Invention] shall be and remain the sole and exclusive property of [LWRC]." Employment Agreement ¶ 11(a). The agreement also contained a royalty provision with respect to the Invention:

> Employer hereby acknowledges that [Plaintiff] has developed certain Intellectual Property prior to the execution of this Agreement which Employer desires to exercise ownership rights including patents developed while [Plaintiff] was employed by [LWRC]. Employer will separately pay a royalty of one half of one percent (.05%) on the net sale price of each product containing a previously patented or patentable or otherwise protected device developed by [Plaintiff] . . . The royalties[] payable under this subsection shall not be due and payable until Employer's books of accounts show the existence of pre-tax profits . . . Payment of royalties under this section shall not be withheld or terminated regardless of any Termination of the [Plaintiff] for any reason.

Employment Agreement ¶ 11(f); *see also* Pl.'s Facts ¶ 18. The Employment Agreement also stated that "[t]his Agreement is personal to [LWRC] and to [Plaintiff] and may not be assigned by either party without the written consent of the other." Employment Agreement ¶ 13. And it provided that "[t]his Agreement shall be interpreted and construed in accordance with the laws in Virginia." *Id*. ¶ 22.

On January 20, 2006, Defendant's subsidiaries sold their interests in LWRC to the Leitner-Wise Acquisition Group, LLC. *See* Def.'s Mot. for Summ. J., ECF No. 15 [hereinafter Def.'s Mot.], Def.'s Stmt. of Material Facts in Support of Def.'s Mot. for Summ. J., ECF No. 15-2 [hereinafter Def.'s Facts], ¶ 1; *see also* Def.'s Mot., LWAG Certificate of Incorporation, ECF No. 15-9 [hereinafter LWAG Incorporation], at KON 000276–279; *see also* Pl.'s Facts ¶ 27 (acknowledging "Defendant claims to have sold all of its interest to the Leitner-Wise Acquisition Group, LLC on January 20, 2006" without contesting the fact). Plaintiff, a member and manager

of the Leitner-Wise Acquisition Group, signed the acquisition documents. Def.'s Facts ¶¶ 2–3; *see also* LWAG Incorporation at KON 000233, KON 000278; Pl.'s Opp'n to Def.'s Mot., ECF No. 23 [hereinafter Pl.'s Opp'n] (not contesting fact).

Ten months later, Plaintiff left his employment with LWRC. Compl. ¶ 22; Def.'s Facts ¶ 7 (citing to Termination Letter); Pl.'s Opp'n (not contesting fact). On October 31, 2006, contemporaneous with his departure, Plaintiff signed a Termination Agreement "by and between [LWRC] and [Plaintiff]." *See* Def.'s Mot., Termination of Employment, ECF No. 15-11 [hereinafter Termination Agreement]; Pl.'s Opp'n (not contesting fact). The Termination Agreement contained a broadly worded general release provision:

> In exchange for the execution of this letter agreement by [LWRC], the execution of the Equities Purchase Agreement by Ryan and other good and valuable consideration, you hereby, among other things, fully, forever, irrevocably and unconditionally release and discharge [LWRC], and any subsidiary or affiliated organization of the Company and their current or former officers, directors, stockholders, corporate affiliates, members, managers, attorneys or employees (the "Released Parties") from any and all claims, charges, complaints, demands, actions, causes of action, suits, rights, debts, sums of money, costs, accounts, covenants, contracts, agreements, promises, omissions, damages, obligations, liabilities and expenses (including attorney's fees and costs), of every kind and nature, known or unknown, which you ever had or now have against the Released Parties, including, but not limited to, all claims arising out of your employment, all claims arising out of the Employment Agreement, all claims arising out of your separation from employment, all claims arising from any failure to re-employ you . . . all wrongful discharge claims, common law tort, defamation, breach of contract and other common law claims . . . .

4

Termination Agreement ¶ 1. The Termination Agreement defined the "Employment Agreement" to be the agreement containing the royalty provision. *Id.* ¶ (i) (defining Employment Agreement as agreement signed on April 11, 2005).[2]

According to Plaintiff, on April 18, 2008, LWRC sold its interest in the Invention to LWRC International, LLC for five million dollars. *See* Compl. ¶¶ 28, 36; *see also* Compl., Ex. D, ECF No. 1-4. Defendant never paid Plaintiff royalties for the Invention. *See* Pl.'s Facts ¶ 28; Def.'s Opp'n Facts (not contesting fact).

According to Plaintiff, at some point a copy of the 2005 Employment Agreement was taken from him, and in 2014, an immigration attorney for Plaintiff discovered the Employment Agreement and provided it to Plaintiff. *See* Compl. ¶¶ 24, 39.

### B.     Procedural Background

Plaintiff filed this action on September 11, 2017, pleading four causes of action against Defendant: (1) breach of contract, (2) unjust enrichment, (3) fraudulent inducement, and (4) conversion. *See* Compl. ¶¶ 40–67. The breach of contract and unjust enrichment claims are premised on Defendant's alleged failure to pay him royalties under the Employment Agreement. *See id.* ¶¶ 40–52. The fraudulent inducement and conversion claims contend that Defendant caused Plaintiff to enter into unspecified contracts under false pretenses, namely, Defendant promised to fund LWRC through a private offering, when it never intended to do so. *See id.* ¶¶ 53–67.

Defendant filed an initial Answer on November 15, 2017, *see* Answer, ECF No. 7, after which the court entered a scheduling order, which permitted discovery to commence as of

---

[2] Plaintiff disputes the significance of an IP assignment signed contemporaneously with the Termination Agreement in light of a prior IP assignment. *See* Pl.'s Opp'n at 1–2. But neither IP assignment is material to the court's decision, so the court does not address them in its recitation of uncontested, material facts.

December 18, 2017, *see* Order, ECF No. 11, at 1. The court set September 18, 2018, as the discovery deadline. *See id.* Defendant filed an Amended Answer on February 6, 2018. *See* Am. Answer.

Shortly thereafter, on March 2, 2018—six months before the close of discovery—Defendant moved for summary judgment as to all claims. *See* Def.'s Mot. Plaintiff did not, however, file a timely opposition to Defendant's motion. Instead, over three months later, on June 18, 2018, Plaintiff filed a motion seeking to "expand discovery deadlines" and "hold responses to Defendant's Motion for Summary Judgment in abeyance." Mot. to Expand Disc., ECF No. 19 [hereinafter Mot. to Expand Disc.], at 1. Before briefing on his motion became ripe, however, Plaintiff filed his opposition to Defendant's Motion for Summary Judgment on June 27, 2018. *See* Pl.'s Opp'n. Then, two months later, Plaintiff moved for partial summary judgment, asking the court to find that Defendant had breached the Employment Agreement by assigning the Invention without his consent and without compensation. *See generally* Pl.'s Mot.

The court now addresses all three motions: (1) Defendant's Motion for Summary Judgment, (2) Plaintiff's Motion to Expand Discovery and to Hold Defendant's Motion in Abeyance, and (3) Plaintiff's Motion for Partial Summary Judgment. The court begins by analyzing the parties' motions for summary judgment, then turns to Plaintiff's motion to extend the time for discovery and to hold in abeyance a decision on summary judgment.

### III. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "genuine dispute" of a "material fact" exists when the fact is "capable of affecting the substantive outcome of the litigation" and "the evidence is such that a reasonable jury could

return a verdict for the nonmoving party." *Elzeneiny v. District of Columbia*, 125 F. Supp. 3d 18, 28 (D.D.C. 2015).

In assessing a motion for summary judgment, the court considers all relevant evidence presented by the parties. *See Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 495 (D.C. Cir. 2008). The court looks at the facts in the light most favorable to the nonmoving party and draws all justifiable inferences in that party's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). If the court determines "no reasonable jury could reach a verdict in [his] favor," then summary judgment is appropriate. *Wheeler v. Georgetown University Hosp.*, 812 F.3d 1109, 1113 (D.C. Cir. 2016). Courts are "not to make credibility determinations or weigh the evidence." *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006).

## IV. DISCUSSION

### A. Motions for Summary Judgment

Defendant's Motion for Summary Judgment is granted—and Plaintiff's Partial Motion for Summary Judgment is denied—for the following three reasons. *First*, Plaintiff expressly released Defendant as to all claims he now asserts. *Second*, all of Plaintiff's claims are barred by applicable statutes of limitations. And, *third*, Koniag is an improper defendant as to the breach of contract claim.

#### 1. *Express Release of Claims*

Under Virginia law,[3] a contract must be interpreted as written. *See, e.g., Bridgestone/Firestone v. Prince William Square Assocs.*, 250 Va. 402, 407 (Va. 1995) ("When

---

[3] In interpreting substantive contract issues, the court looks to Virginia law. The two main contracts at issue in this case—the Employment Agreement and the Termination Agreement—expressly state that Virginia law governs any contractual dispute. *See* Employment Agreement ¶ 22 *and* Termination Agreement ¶ 9. The court must honor such explicit choice-of-law agreements by contracting parties. *See Southern California Edison Co. v. F.E.R.C.*, 502 F.3d 176, 181 (D.C. Cir. 2007); *see also* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187 (1971); *cf. Milanovich v. Costa Crociere, S.p.A.*, 954 F.2d 763, 767–68 (D.C. Cir. 1992) (applying a choice-of-law provision in passage tickets).

contract terms are clear and unambiguous, a court must construe them according to their plain meaning."). Further, "[l]ike the terms of any contract, the scope and meaning of a release agreement ordinarily is governed by the intention of the parties as expressed in the document they have executed." *Berczek v. Erie Ins. Group*, 259 Va. 795, 799 (Va. 2000). "When the contract is lawful and the language is free from ambiguity, the agreement furnishes the law that governs the parties." *Id.* In this case, the Termination Agreement's release provision is "free from ambiguity." It is clear, expansive in scope, and enforceable under Virginia law. *See Ferguson v. Stokes*, 287 Va. 446, 450–51 (Va. 2014) (enforcing provision in which the parties mutually released each other "from any and all claims . . . past or present, known or unknown, fixed or contingent, which have arisen or might arise in the future, for or because of any matter or thing done, omitted, or suffered to be done from the beginning of time to the date of th[e] [r]elease"). The Termination Agreement therefore "furnishes the law that governs the parties." *Berczek*, 259 Va. at 799.

The release's broad terms easily reach both Defendant and the claims asserted against it. As part of the Termination Agreement, Plaintiff agreed to generally release all entities and persons affiliated with LWRC, both past and present. The Termination Agreement defines the "Released Parties" to include "the Company, and any subsidiary or affiliated organization of the Company and their current *or former* officers, directors, stockholders, *corporate affiliates*, members, managers, attorneys, or employees . . . " Termination Agreement ¶ 1 (emphasis added). This definition plainly includes Defendant. At the time of the Termination Agreement, Defendant qualified as a "former" "corporate affiliate" of LWRC, as Defendant was the parent company of LWRC's "former" majority owners, Koniag Development Corporation and Integrated Concepts and Research Corporation. *See* Def.'s Facts ¶ 1; LWAG Incorporation at KON 000276–279; Pl.'s

Facts ¶ 27 (noting that Defendant's subsidiaries divested from LWRC prior to Termination Agreement). The clear terms of the release therefore include Defendant.

Moreover, the release easily covers the claims Plaintiff asserts against Defendant. As relevant here, Plaintiff agreed to

> fully, forever, irrevocably and unconditionally release and discharge [the Released Parties] from any and all claims, charges, complaints, demands, actions, causes of action, suits, rights, debts, sums of money, costs, accounts, covenants, contracts, agreements, promises, omissions, damages, obligations, liabilities and expenses (including attorney's fees and costs), of *every kind and nature, known or unknown, which you ever had or now have* against the Released Parties, including but not limited to, . . . all claims arising out of the Employment Agreement . . . all common law tort, . . . breach of contract and other common law claims . . .

Employment Agreement ¶ 1 (emphasis added). This sweeping text easily encompasses the causes of action Plaintiff presses here. Count I for breach of contract arises out of the commitment to pay royalties contained in the Employment Agreement. *See* Compl. ¶¶ 40–52. The release expressly reaches "all claims arising out of the Employment Agreement." Termination Agreement ¶ 1. Counts II, III, and IV for unjust enrichment, fraudulent inducement, and conversion, respectively, are likewise covered by the release. Plaintiff agreed not to bring against the Released Parties, including Defendant, any "common law tort[s]" or "other common law claims," whether he knew about them at the time or not. *Id*. In short, the unambiguous text of the Termination Agreement's release provision is controlling and thus, by itself, ends Plaintiff's case.

Plaintiff makes three unavailing arguments to dispute the release's power. First, he erroneously contends that the release "does not address . . . his entitlement to compensation for his intellectual property." Pl.'s Opp'n at 8. This argument has no legs. The release applies to "all claims . . . arising out of the Employment Agreement," Termination Agreement ¶ 1, and defines the Employment Agreement as the contract signed on April 11, 2005, *see id.* ¶ (i). It is the

9

Employment Agreement that contains the compensation provision for Plaintiff's intellectual property, upon which he now tries to sue. *See* Employment Agreement ¶ 11(f). But the release expressly precludes him from doing so.

Second, in the same breath as his first argument, Plaintiff insists that he "reasonably did not contemplate" that the release addressed his right to royalty payments. Pl.'s Opp'n at 8. But Plaintiff's post-hoc characterization of his then-understanding is not controlling; the clear and unambiguous terms of the release are what bind him. *See Ott v. L & J Holdings, LLC*, 275 Va. 182, 187 (Va. 2008) (stating that "a court [shall] construe a document according to its plain terms if it is clear and unambiguous on its face"). Any construction of the release that would exclude the claims against Defendant seeking unpaid royalties would be flatly inconsistent with its terms.

Lastly, Plaintiff wrongly asserts that the release does not forbid claims arising from the royalty provision because the Employment Agreement provided that "[p]ayment of royalties under this section shall not be withheld or terminated regardless of any Termination of [Plaintiff] for any reason." *See* Pl.'s Mot. at 8; Employment Agreement ¶ 11(f). This section means that royalty payments would continue after Plaintiff's termination, regardless of the reason. But that provision does not foreclose what happened later. In 2006, Plaintiff ended his employment with LWRC *and* he agreed to release all claims under the Employment Agreement. Thus, even if Plaintiff's right to royalties technically survived his termination,[4] he gave up the ability to enforce that right.

For these reasons, the court finds that the Termination Agreement's release bars Plaintiff's claims against Defendant. Plaintiff's case fails for two other reasons, to which the court now turns.

---

[4] Plaintiff arguably assigned away his royalty rights as part of the Assignment Agreement in 2006, which he entered into at the same time as the Termination Letter. In the Assignment Agreement, Plaintiff transferred and assigned all "right, title and interest" in the Invention to LWRC. *See* Def.'s Mot., Ex. I, ECF No. 15-13, ¶ 2.1. He also agreed that the Assignment Agreement "supersede[s] all prior agreements and understandings, oral and written, between the Parties with respect to the subject matter hereof." *Id.* ¶ 8.4.

## 2. Statutes of Limitations

Before discussing the merits of Defendant's limitations defense, the court must acknowledge a nuance in its choice of law. To determine which law to apply, the court looks to the forum's choice-of-law rules. *See A.I. Trade Fin., Inc., v. Petra Int'l Banking Corp.*, 62 F.3d 1454, 1458 (D.C. Cir. 1995).[5] In the District of Columbia, statutes of limitations are procedural and therefore "almost always mandate application of the District's own statute of limitations." *Id.* The court, therefore, applies D.C. law on this issue.

Under D.C. law, a three-year statute of limitations applies to all four of Plaintiff's claims.[6] *See* D.C. Code § 12-301(7) (contract claim); *see id.* § 12-301(8) (applying three-year limitation period to claims "for which a limitation is not otherwise specially prescribed"). At the latest, Plaintiff's claims accrued in 2008, nine years before he brought this case. A claim for breach of contract accrues when a party fails to perform as required by the contract. *See Eastbanc, Inc. v. Georgetown Park Assocs. II, L.P.*, 940 A.2d 996, 1004 (D.C. 2008) (citations omitted). The breach of the Employment Agreement occurred no later than April 18, 2008, when LWRC sold the rights in the Invention to LWRC International, Inc. without Plaintiff's consent. *See* Compl. ¶¶ 28, 43; Employment Agreement ¶ 13 (stating that the Agreement could "not be assigned by either party without the written consent of the other"). Similarly, an unjust enrichment claim accrues at the time of the wrongful act that gives rise to a duty of restitution. *See News World Commc'ns, Inc. v. Thompsen*, 878 A.2d 1218, 1223 (D.C. 2005) (internal quotation and citation omitted). That claim, too, accrued on April 18, 2008, when LWRC breached the Employment Agreement and

---

[5] The choice-of-law provisions in the contracts at issue do not bear on the statute of limitations inquiry—as they do on the other issues in this opinion—because they supply only the substantive law applicable to the dispute. *See Dalal v. Goldman Sachs & Co., Inc.*, 575 F.3d 725, 726 (D.C. Cir. 2009).

[6] Even if the court followed Virginia law, Plaintiff could rely on five years at most. Virginia law allows for five years for claims pertaining to contracts in writing and five years for conversion claims. *See* Va. Code § 8.01-246(2); Va. Code § 8.01-243(B). It provides three years for unjust enrichment, *see* Va. Code § 8.01-246(4), and two years for fraudulent inducement, *see* Va. Code § 8.01-248 (covering personal actions not otherwise specified).

11

earned five million dollars without providing restitution to Plaintiff.  *See* ¶¶ 28, 36, 47.  Plaintiff's contract and quasi-contract claims needed to be filed by April 18, 2011, and are thus time-barred.

Claims of fraudulent inducement and conversion accrue when a plaintiff has actual or inquiry notice of the wrong committed by a defendant.  *See Diamond v. Davis*, 680 A.2d 364, 372 (D.C. 1996).  Plaintiff's fraudulent inducement claim is based on Defendant's representations during contract negotiations that LWRC "would continue as a going concern" and it would be funded by a private offering.  Compl. ¶ 54.  That claim accrued on January 20, 2006, when Defendant sold its interest in LWRC, *see* Def.'s Facts ¶ 1, clearly demonstrating that the promises to treat LWRC as a "going concern" or to fund it through a private offering were untrue.  Plaintiff obviously knew about that sale because Defendant sold its interest in LWRC to a group in which Plaintiff was a member.  *See id.* ¶¶ 1–3.

Plaintiff's conversion claim is based on the sale of his "intellectual property . . . unlawfully . . . for five million dollars."  Compl. ¶ 66.  It, therefore, accrued on or near April 18, 2008, when Plaintiff should have been on notice of the alleged unlawful sale.  At the latest, it accrued on December 9, 2008, when Plaintiff finally received his patent for the Invention, which listed LWRC International, and not Defendant or its subsidiaries, as the assignee.  *See* Compl., U.S. Patent, ECF No. 1-1, at 1.  For these reasons, Plaintiff had to have filed at the latest by December 9, 2011, three years after his conversion claim accrued.  He filed nearly six years later.

Plaintiff invokes equitable tolling to advocate for a later accrual date.  He relies solely on the assertion that "[i]mmediately following cessation of his unemployment with [LWRC], unknown persons removed all copies of [Plaintiff's] contracts from his possessions at the company's offices and all copies of [the Employment Agreement] were believed to be lost."

12

Compl. ¶ 24; *see also* Pl.'s Opp'n at 10–12; Pl.'s Mot. at 13–15. This allegation, even if taken to be true, cannot trigger equitable tolling.

In the District of Columbia, equitable tolling may be found if the defendant "ha[s] done something that amounted to an affirmative inducement to plaintiffs to delay bringing action." *Beach TV Props., Inc., v. Solomon*, 306 F. Supp. 3d 70, 89 (D.D.C. 2018) (internal quotation marks and citations omitted). Put another way, equitable tolling may be found if the defendant "has done anything that would tend to lull the plaintiff into inaction." *P'ship Placements, Inc. v. Landmark Ins. Co.*, 722 A.2d 837, 842 (D.C. 1998) (citations omitted). To prevail with equitable tolling, a plaintiff must also show he has "pursu[ed] his rights diligently." *Mizell v. Suntrust Bank*, 26 F. Supp. 3d 80, 87 (D.D.C. 2014) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).

Plaintiff fails the equitable tolling standard for a host of reasons. First, he does not contend that *Defendant* took the affirmative act of stealing the contract. Instead, he alleges "unknown persons" stole them. Compl. ¶ 24. For that reason alone, equitable tolling does not apply. Second, Plaintiff comes nowhere close to showing that, even if Defendant or its agents took the contracts, such action would "tend to lull plaintiff into inaction." *P'ship Placements*, 722 A.2d at 842. The alleged theft of the contracts did nothing to prevent his causes of action, all of which could have been brought without the stolen material. For his breach of contract and unjust enrichment claims, Plaintiff had to have known the Employment Agreement contained a royalty agreement—he was a party to the contract, after all. *See Fitzgerald v. Seamans*, 553 F.2d 220, 228–29 (D.C. Cir. 1977) (finding no equitable tolling because appellant knew of the material facts). Similarly, for his fraudulent inducement and conversion claims, Plaintiff knew about Defendant's supposed false representations *made to him* in the negotiated sale of LWRC. *See* Compl. ¶ 55. Thus, Plaintiff could have timely pleaded these claims even without the contracts. Furthermore, these reasons

13

demonstrate that Plaintiff did not act diligently in bringing his claim. Equitable tolling therefore does not apply.

In addition to equitable tolling, Plaintiff avers that 35 U.S.C. § 286 provides a six-year limitation for patent infringement damages. Pl.'s Opp'n at 12–13; Pl.'s Mot. at 15–16. This is a frivolous argument because Plaintiff did not plead patent infringement. *See* Compl. ¶¶ 40–67.

Accordingly, none of Plaintiffs' causes of action overcome the limitations bar. The court turns now to its final reason to grant Defendant's Motion.

### 3. *Koniag is an Improper Defendant for the Breach of Contract Claim*

For his breach of contract claim, Plaintiff has not put forth adequate evidence that Defendant owed him any legal obligation under the Employment Agreement. As discussed, Plaintiff's first claim arises from the 2005 Employment Agreement entitling him to royalties on the Invention. That agreement was signed by LWRC and Plaintiff. *See* Employment Agreement ¶ 27. Koniag was not a party to that contract, so it cannot be held liable under it.

Plaintiff rebuts this straightforward logic by arguing that Koniag had "absolute dominion and control" over LWRC when the contract was made. Pl.'s Mot. at 10–13. Plaintiff bolsters this argument with an affidavit testifying that Koniag and its subsidiaries owned 53% of LWRC, Koniag's Chief Operating Officer was LWRC's Corporate Secretary, and that person was paid by Koniag. *See* Pl.'s Opp'n, Pl.'s Aff., ECF No. 23-1, ¶¶ 2–6. He also states that Koniag and LWRC "were [] enmeshed with shared officers, board members and compensation of the employees"; "Koniag was the majority shareholder of [LWRC]"; "a majority voting block of the Board of Directors of [LWRC] were held by two current board members of Koniag"; and three individuals "simultaneously controll[ed] [LWRC] while directly controlling the three hundred thousand dollar

14

line of credit from Koniag." Pl.'s Mot. at 10–11.  These facts, even if true, are insufficient to have Koniag bear responsibility for LWRC's legal obligations.

Under Virginia law,[7] "[b]efore [a] corporate entity may be properly disregarded and the parent corporation held liable for the acts of its subsidiary . . . it must be shown not only that undue domination and control was exercised by the parent corporation over the subsidiary, but also that this control was exercised in such a manner as to defraud and wrong the complainant." *Beale v. Kappa Alpha Order*, 192 Va. 382, 396 (Va. 1951).  Here, the facts Plaintiff provides, even if read in the light most favorable to him, do not come close to proving that Defendant exercised control over LWRC "in such a manner as to defraud and wrong the complainant." *Id*.  Not one of the above facts even touches on how Plaintiff was defrauded by Defendant's alleged exercise of "undue domination and control" over LWRC.  Therefore, no reasonable jury could find that LWRC's corporate form should be disregarded, such that Defendant should be held liable for breach of the Employment Agreement.

*     *     *

For the foregoing reasons, Defendant's Motion for Summary Judgment is granted and Plaintiff's Motion for Partial Summary Judgment is denied.  The court now turns to Plaintiff's Motion to Expand Discovery and Hold Summary Judgment in Abeyance.

### B. Plaintiff's Motion to Expand Discovery and Hold Summary Judgment in Abeyance Under Federal Rule 56(d)

The court denies Plaintiff's Motion to Expand Discovery and Hold Summary Judgment for three reasons.  First, the motion is untimely.  Second, Plaintiff has not complied with the

---

[7] The court reverts to using Virginia law for this substantive issue.  *See supra* note 3.

established procedural requirements of a Rule 56(d) motion. And, third, no foreseeable additional discovery could help Plaintiff defeat Defendant's Motion for Summary Judgment.

### 1. *Untimeliness*

To begin, Plaintiff filed his Motion to Expand Discovery and to Hold Defendant's Motion in Abeyance long after it came due. Plaintiff did not file a timely opposition to Defendant's motion and instead filed his Rule 56(d) motion three months late. The court nevertheless could consider Plaintiff's motion if he demonstrates "excusable neglect" for his tardiness. Fed. R. Civ. P. 6(b)(1)(B). But this he fails to do. Missing a deadline because of other case responsibilities does not constitute excusable neglect. *See D.A. v. District of Columbia*, 2007 WL 4365452, at * 4 (D.D.C. Dec. 6, 2007) (citing *Citizens' Protective League v. Clark*, 178 F.2d 703, 704 (D.C. Cir. 1949) and *Maghan v. Young*, 154 F.2d 13, 13 (D.C. Cir. 1946)). Yet, that is Plaintiff's counsel's only justification for missing the deadline in this case. *See* Mot. to Expand Disc. ¶¶ 9–19. Plaintiff's motion is thus denied as untimely.

### 2. *Non-compliance with Procedural Requirements*

Even if Plaintiff's motion was timely, the court would not grant it. To prevail on a Rule 56(d) motion, a party must submit a declaration that satisfies three criteria. With "sufficient particularity," the declaration "must outline the particular facts he intends to discover and describe why those facts are necessary to the litigation"; "explain why he could not produce the facts in opposition to the motion"; and "show the information is in fact discoverable." *Convertino v. U.S. Dep't of Justice*, 684 F.3d 93, 99–100 (D.C. Cir. 2012) (cleaned up); *see also Ames v. Nielsen*, 286 F. Supp. 3d 70, 95 (D.D.C. 2017) (cleaned up). Plaintiff fails to satisfy any of these requirements. Plaintiff acknowledges as much, writing that "he has not had sufficient time to examine what discovery has been produced, to discern what exactly is deficient and to enumerate the elements

of a Rule 56(d) affidavit." Mot. to Expand Disc. at 6. Plaintiff's Rule 56(d) motion therefore fails under *Convertino*'s requirements.

### 3. *Discovery Would Make No Material Difference*

Even if Plaintiff could overcome these threshold deficiencies, the court finds a much deeper flaw with Plaintiff's request—there is no plausible discovery that could overcome the court's reasons for granting Defendant's Motion for Summary Judgment. The court cannot conceive of evidence Plaintiff could muster to overcome the Termination Agreement's release, to prevail on equitable tolling, *and* to prove Koniag is the proper defendant as to his breach of contract claim. For this additional reason, his Rule 56(d) request is denied.

### 4. *Expanding Discovery Request*

Finally, the court denies Plaintiff's request to "expand" discovery, which the court interprets as a motion to extend the discovery period. That motion, too, is denied. Plaintiff concedes his lack of diligence in reviewing and pursuing timely discovery. *See* Mot. to Expand Disc. at 6; *see also Lopez v. Timeco Inc.*, 291 F. Supp. 3d 1, 3 (D.D.C. 2017) (noting that the primary consideration in deciding whether to amend a scheduling order is the party's diligence in seeking discovery before the deadline). Additionally, as discussed, additional time for discovery will not alter the outcome. Extending discovery is therefore not warranted.

## V. CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment is granted. Plaintiff's Motion for Partial Summary Judgment and Motion to Expand Discovery and Hold Summary Judgment in Abeyance are denied.

A separate, final order accompanies this Memorandum Opinion.

Dated: December 13, 2018

Amit P. Mehta
United States District Judge